THADDEUS NEDZA AND PAUL JASTRABEK, PROSECU-
TORS, v. SEYMOUR KLEIN, MAGISTRATE OF THE SEC-
OND CRIMINAL COURT OF THE CITY OF NEWARK,
RESPONDENT.

JOSEPH CUSANO AND JOSEPH STONKAUSKUS, PROSECU-
TORS, v. SEYMOUR KLEIN, MAGISTRATE OF THE SEC-
OND CRIMINAL COURT OF THE CITY OF NEWARK,
RESPONDENT.

Submitted January 31, 1936—Decided May 6, 1936.

Before Justices PARKER, CASE and BODINE.

For the prosecutors, *William H. Parry.*

For the respondents, *Frank A. Boettner* (*Thomas M. Kane,*
of counsel.)

The opinion of the court was delivered by

PARKER, J.   Adopting the introductory language of the
brief for prosecutors, "This writ brings up for review judg-
ments of conviction before Seymour Klein, Magistrate of the
Second Criminal Court of the City of Newark, in two cer-
tain proceedings:

"1. A complaint made against Thaddeus Nedza and Paul
Jastrabek, charging that at Ferry Street, in the said City
of Newark, on November 19th, 1935, they did consort with
Joseph Cusano and Joseph Stonkauskus, both of whom are

criminals, in violation of chapter 133, Public Laws of the State of New Jersey, 1934;

"2. A complaint made against Joseph Cusano and Joseph Stonkauskus, that at Ferry Street in the said city of Newark on the 19th day of November, 1935, they did consort with Thaddeus Nedza and Paul Jastrabek, both of whom are criminals, in violation of chapter 133, Public Laws of the State of New Jersey, 1934.

"The two defendants in each complaint, the cases being tried together before Police Magistrate Seymour Klein and being consolidated by order of the Supreme Court in these proceedings, were all found guilty and received respective sentences of three months in the Essex County Penitentiary."

The statute applicable is paragraph (b) of chapter 133 of the laws of 1934 (*Pamph. L., p.* 364), which paragraph reads as follows:

"(b) Any person who shall, upon apprehension, be proven to the satisfaction of the magistrate, recorder or judge before whom such person or persons shall be brought, to have consorted with thieves, burglars, pickpockets, swindlers, confidence men or other classes of criminals shall be deemed and adjudged to be a disorderly person."

The attack is upon the statute itself as unconstitutional because in violation of personal liberty; also as obscure and impossible of interpretation; and on the convictions as not warranted by the proof.

All four men have criminal records, and we think the magistrate was fully warranted in finding they were in the statutory category.

Nedza and Jastrabek were charged with "consorting" with Cusano and Stonkauskus and *vice versa.*

The evidence satisfactorily showed that all four were sitting together in a parked automobile belonging to one of them, from about nine-forty-five to ten-forty-five A. M. in Ferry street, Newark, and were observed by police officers. No conversation was heard nor any act seen that indicated criminal intent. It may well be that they were up to mischief of some kind but of that there is no proof at all. The offense

charged was "consorting." Counsel for prosecutors argues that the act of simply sitting together on one occasion in a parked automobile, without more, is not "consorting" in the intendment of the statute, and we agree in that view.

In Webster's New International Dictionary, Second Edition, the verb "to consort" is defined as follows: "to keep company; to associate." This seems to indicate something more than merely one meeting conceivably altogether casual in character.

In the Acts of the Apostles, chapter 17, verse 1, we find the sentence, "And some of them believed, and consorted with Paul and Silas;" &c. A glance at the context will show clearly that the "consorting" was tantamount to what at the present day is often called "joining the church."

So in Shakespeare we find in Macbeth, act III, scene 3, near the end of the scene Malcolm says: "what will you do? Let's not consort with them: To show an unfelt sorrow is an office which the false man does easy."

There are at least half a dozen other places in Shakespeare where the intransitive verb "to consort with" is used in the sense of keeping company either as a continuous or as a repetitious act and we find none which has the meaning of merely meeting with some one on a single occasion.

Some reference is made in the respondent's brief to a very recent New York case based upon a statute of that state which, however, is not identical in language with our statute. It seems to define three different things which will constitute disorderly conduct. The first is being engaged in some illegal occupation. The second is where the party in question bears an evil reputation and with an illegal purpose consorts with thieves and criminals; and thirdly, where the party frequents unlawful resorts. We cannot see that either the New York statute or the New York decision indicates that the word "consort" imports a case of disorderly conduct where there is only one meeting.

As already noted, there was no indication of any habitual association between the several parties named in the present case. They were sitting together on one occasion only in

an automobile and in a public street. If such an act is to be upheld as constituting disorderly conduct within the intendment of the statute, that would apply to any respectable citizen who casually, or even intentionally, stops on a street corner and converses with a known criminal. We cannot believe that any such meaning was intended and consequently conclude that on this ground the conviction under review must be set aside.

This result makes it unnecessary to decide the question whether the statute itself is unconstitutional. That point should properly be left for decision in a case where the conviction is plainly within the purview of the statute as we so understand its meaning.